**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANE EDDOWES,** | : | **Civil No. 3:18-cv-125** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **MARK GARMAN, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Shane Eddowes, the *pro se* plaintiff*,* is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at the State Correctional Institution at Somerset ("SCI-Somerset"). Eddowes was previously incarcerated at SCI-Rockview and brings this action pursuant to 42 U.S.C. § 1983 against a host of DOC officials from Rockview, including correctional, medical, and pharmacy personnel, alleging that he either did not receive medication he takes for seizure disorder, or that he received a placebo in place of his actual medication, in violation of the Eighth and Fourteenth Amendments. Many defendants have been dismissed from this action, and the remaining defendants have moved for summary judgement, arguing that Eddowes was, in fact, receiving his

seizure medication from the Rockview medical staff, and accordingly, there has been no constitutional violation.

After review of the record, we find that the defendants have demonstrated that there is no genuine issue of material fact in this case, as Eddowes was receiving the medication that he claims was being withheld or altered. Accordingly, for the reasons set forth below, we will recommend that the defendants' motion for summary judgment be granted.

## II. <u>FACTUAL BACKGROUND</u>

Shane Eddowes is currently incarcerated at SCI-Somerset in the Pennsylvania DOC; however, Eddowes' complaint consists of allegations that arose while he was incarcerated at SCI-Rockview. He contends that, while he was incarcerated at Rockview, the medical staff and correctional officers did not give him his prescribed medication, Klonopin, for his seizure disorder. (Doc. 35, at 3).[1] He alleges that his medication was either withheld entirely, or that the staff at Rockview gave him an "adulterated placebo" in place of his Klonopin. (<u>Id.</u>)

Since at least December 2014, Eddowes has been prescribed Klonopin to treat seizures and schizophrenia. (Doc. 73-2, at 6). The DOC uses an Electronic

---

[1] Eddowes was given the generic brand of Klonopin, Clonazepam, and the defendants use these two words interchangeably throughout the pleadings. (Doc. 73-2, at ). However, for the sake of consistency, we will refer to Eddowes' medication as "Klonopin."

Medication Administration Record ("EMAR") to monitor the distribution of medications in its facilities. (Doc. 73-1, at 3) When an inmate is prescribed medication, it is entered into EMAR, assigned to the inmate through EMAR, and assigned a barcode in the system. (Id.) At the time medications are distributed, medical staff scan the inmate's identification, review all prescriptions, and scan each medication an inmate will be administered at that time. (Id.) Sapphire is a report the EMAR system creates to show when inmates were administered specific medication. (Id.)

Eddowes has been prescribed this medication by both medical staff and psychiatric staff at Rockview. (Doc. 73-2, at 13, 44). For the most part, Eddowes has been receiving two milligrams of a generic substitute, Clonazepam, twice daily. (Id., at 3). There was a lapse of time when Eddowes did not take his prescribed medication regularly. Eddowes did not take his medication from May 31, 2015 until June 4, 2015 at 6:30 p.m., when he was administered Klonopin regularly once again. (Id., at 13, 17).

In December 2015, April 2016, August 2016, June 2017, and July 2018, Eddowes completed bloodwork to determine the levels of Klonopin in his system. (Id., at 96-106). Each exam resulted in Clonazepam being found in his blood stream

within normal limits.[2] Id. Despite taking Klonopin and having the medication in his system, Eddowes suffered two seizures, one on June 22, 2017, and the other on August 24, 2017. (Doc. 70, at 2).

Although medical records from Rockview indicate that Eddowes has been taking his Klonopin since 2015, (see generally Doc. 73-2), Eddowes disputes that there is no Benzodiazepine in his system which means he is not taking Klonopin as prescribed, and he relies on urine analysis testing that he has been subjected to over the years. (Doc. 76, at 18, 20). However, the defendants have rebutted this assertion through the declaration of Jeremy Portzline, a correctional officer in the Security Office at Rockview, whose main duties includes collecting urine samples, which asserts that drugs only register on urine tests when drug levels are over a certain limit. (Doc. 77-1, at 3). The test would yield a positive result only if Eddowes had 300 ng/mL in his system, a blood level well beyond the therapeutic levels prescribed for Eddowes. (Id.)

Eddowes filed multiple grievances and appeals related to his medication and treatment, including allegations that: his medications were both stolen and changed to a different medication; that there was medical fraud and a failure to investigate by prison staff; he was being given Tegratol instead of Klonopin; and his medications

---

[2] The reference range was 15-80ng/ml. Eddowes blood tests showed that the levels of Klonopin in his system in units of ng/ml were: 31, 27, 29, and 20. (Doc. 73-2, at 96-106).

did not contain Klonopin and were contaminated, adulterated, and replaced with a placebo.[3] Eddowes further contends the defendants failed to conduct proper investigations into his claims and were working together to make sure the truth did not come to light.[4] However, records show that each time Eddowes filed a grievance, it was investigated by prison staff, deemed unfounded, and findings were confirmed by another prison staff member.[5] The results of these investigations indicated that there were no discrepancies in medication inventories, that the manufacturer of Klonopin had changed the color of the medication which SCI-Rockview received, that DOC policies mandate that the medication Eddowes was receiving be crushed into water, and that recent blood tests verified there were correct amounts of Klonopin in Eddowes' system.

Eddowes initiated this action by filing a complaint in the Court of Common Pleas of Centre County on October 25, 2017, naming 22 institutions and individual defendants and charging them with violating his civil rights. (Doc 1, at 2). The defendants removed the action to this Court on January 17 and 25, 2018. (Docs. 1, 2). Eddowes' Eighth Amendment claim against the defendants is based upon the

---

[3] Doc. 73-3, at 19-21, 23, 26-30, 33-37, 40-44, 47-50, 52-53, 59-60, 62-63, 65-66, 72-73, 75-76, 78-83, 89-90, 92-93, 95-98, 104-05, 107-08, 110-13, 115-16, 118-21, 123-24, 126-27, 133-34, 136-37, 139-40.

[4] Doc. 76, at 6-11.

[5] Doc. 73-3, at 18, 22, 24-25, 31-32, 38-39, 45-46, 51, 55-58, 61, 64, 68-71, 74, 77, 85-88, 91, 94, 100-03, 106, 109, 114, 117, 122, 125, 129-132, 135, 138.

allegation that he was administered an anti-seizure medication, Klonopin, which did not contain Clonazepam as an active ingredient (Doc 1-1, at 8). Further, he claims that the defendants failed to investigate the grievances he filed concerning his medication. (Id., at 9-10).

On January 26, 2018, defendants Garman, Houser, McMahon, Probst, Williams, Ruggerio, Butler, Ranio, Stabley, Chamberlin, Swanger, Campbell, Silva, Drum, and Vance filed a motion to dismiss. (Doc. 6). Defendants Henry and Denning filed a motion to dismiss on February 15, 2018. (Doc. 15). Subsequently, on February 16, 2018, Eddowes moved for leave to amend the complaint because he intended to drop a claim against one of the defendants while also adding more defendants. (Doc. 16). On February 23, this Court ordered Eddowes to respond to the motion to dismiss submitted on January 26, (Doc. 17), but granted his motion to amend his complaint on March 2, 2018. (Doc. 20).

After a series of motions to dismiss filed by various defendants in this case, this Court adopted the Reports and Recommendations of the undersigned and dismissed the plaintiff's claims against the defendants—three were dismissed with prejudice, and the rest were dismissed without prejudice with instructions for the plaintiff to file an amended complaint against those defendants. (Doc. 33). On June 4, 2018, Eddowes filed an amended complaint against those defendants. (Doc. 35).

On June 18, 2018 Defendants Henry and Denning filed a motion to dismiss the amended complaint, which was granted on August 16. (Docs. 38, 43).

On April 8, 2019, the remaining defendants in this case filed the instant motion for summary judgment. (Doc. 71). The defendants assert that they are entitled to judgment as a matter of law because Eddowes has been receiving his medication and because the prison officials have responded to his grievances. (Doc 72, at 13-16). Further, the defendants contend they are entitled to qualified immunity. (Id.) Eddowes filed a response on June 5, 2019, reiterating his allegations against the defendants that he either did not receive the prescribed medication that treats his seizure disorder, or that he has received a placebo in place of his actual medication, in violation of the Eighth and Fourteenth Amendments. (Doc. 76). The defendants filed a timely response on June 13, 2019, (Doc. 77), and thus the motion is ripe for resolution.

After a review of the record, we conclude that there is no genuine dispute of material fact, as Eddowes has been receiving his seizure medication that he was prescribed at Rockview. Thus, we will recommend that the defendants' motion for summary judgment be granted.

## III. STANDARD OF REVIEW

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that the court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965,

968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Anderson, 477 U.S. at 255. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## IV. DISCUSSION

As we have explained, the plaintiff claims that he was administered an anti-seizure medication, Klonopin, which did not contain Clonazepam as an active ingredient. Thus, the gravamen of Eddowes' complaint is that he was not receiving, or was receiving an altered version of, his medication. In addition, Eddowes contends that the prison officials at Rockview failed to investigate the situation after he filed grievances related to his medication. However, records provided by the defendants indicate that Eddowes was, in fact, taking his medication as prescribed, and that the defendants addressed the grievances filed by Eddowes regarding his medication. Thus, we find that there is no genuine dispute of material fact, and we will recommend that the defendants' motion for summary judgment be granted.

**A. There Has Been No Eighth Amendment Violation because Eddowes Has Been Receiving His Prescribed Medication.**

Liberally construed, the gravamen of Eddowes' complaint is that prison officials at Rockview violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to give him his prescribed seizure medication. Eddowes faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety. Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must have actually known or be aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). Either direct evidence, Estelle v. Gamble, 429 U.S. 97, 104 (1976), or circumstantial evidence, Farmer v. Brennan, 511 U.S. 825, 842 (1994), may be used to prove that the prison official had knowledge of the risk. Estelle, at 104.

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v.

Beard, 145 F. App'x 743 (3d Cir. 2005) (finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of harm.' A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Gravey v. Martinez, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting Farmer, 511 U.S. at 837, 841)).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle, 429 U.S. at 105. To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Eddowes is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delay provision of medical

13

treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that result in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." <u>White v. Napoleon</u>, 897 F. 2d 103, 109 (3d Cir. 1990).

However, it is also clear that a mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 WL 1522855, at *2 (E.D. Pa Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997) (citing <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown particular medical services were provided to the inmate but the prisoner is dissatisfied with the outcomes of these services. See e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gisllespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Branson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997). Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eight Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . .[The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F. App'x at 197-198 (citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. <u>See</u> <u>Reed v. Cameron</u>, 380 F. App'x 160, 162 (3d Cir. 2010) (citing <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987)). Therefore, where a dispute entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983, since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citations omitted); <u>see, e.g.</u>, <u>Gause v. Diguglielmo</u>, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); <u>Innis v. Wilson</u>, 334 F. App'x 454 (3d Cir. 2009) (same); <u>Rozzelle v. Rossi</u>, 307 F. App'x 640 (3d Cir. 2008) (same); <u>Whooten v. Bussanich</u>, 248 F. App'x 324 (3d Cir. 2007) (same); <u>Ascenzi v. Diaz</u>, 247 F. App'x 390 (3d Cir. 2007) (same). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (<u>quoting</u> <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

At the outset, we note that it is not disputed that Eddowes has a serious medical need. He has a seizure disorder, which is controlled by the medication Klonopin. Thus, the relevant inquiry is whether the defendants were deliberately indifferent to Eddowes' serious medical need by denying or altering his medication.

According to Eddowes, he was not receiving Klonopin. (Doc. 35, at 2). On various occasions, Eddowes claimed that the prison nurses were stealing his medication, or that they were giving him a placebo in place of his actual medication. (Id., at 2-6). He contends that he suffered two seizures, one in June and one in August of 2017, as a result of the defendants' actions. (Id., at 7).

The record shows that Eddowes was taking Klonopin twice daily for several years. (See generally Doc. 73-2). The only time Eddowes was not administered Klonopin was May 31, 2015 to June 4, 2015. No further information was provided by Eddowes or the defendants as to why Eddowes did not receive the medication on these dates. However, there is no evidence that Eddowes suffered any harm as a result of not taking the medication for almost four days.

Further, blood tests confirm the defendants' assertion that Eddowes was given his prescribed medication. The EMAR shows Eddowes consistently took two milligrams of Klonopin twice daily since June 4, 2015. The blood tests performed by Garcia Labs indicate that the levels of Klonopin in Eddowes' system all fell within the normal range of a person actively taking the medication. (Doc. 73-2, at

96-106). Furthermore, although Eddowes contends that his urinalysis testing shows that he is not taking Klonopin, (Doc. 76, Ex. A.), the defendants have attached the declaration of Jeremy Portzline, a correctional officer at Rockview, in which he states that drugs will only register if there is a certain amount in the inmate's body. (Doc. 77, Ex. A., ¶ 3).[6] Thus, Eddowes' reliance on this urinalysis as proof that he is not taking his medication is unavailing.

In sum, even though we do not doubt that Eddowes sincerely believes he was not receiving his medication, or has been receiving a placebo, the undisputed records demonstrate that Eddowes was, in fact, receiving the medication that he was prescribed. Given this immutable evidence demonstrating that Eddowes has received his prescribed medication, we cannot conclude that the prison officials at the SCI-Rockview were deliberately indifferent to a serious risk of harm to Eddowes in violation of the Eighth Amendment.[7] Accordingly, this Eighth Amendment claim fails.

---

[6] CO Portzline further notes in his declaration that there must be 300ng/mL of benzodiazepine in an individual's body in order for it to appear positive on a urine test. (Doc. 77, Ex. A, ¶¶ 4-5).

[7] The defendants also contend that they are also entitled to qualified immunity on the plaintiff's claim. The doctrine of qualified immunity shields officials from civil liability "unless the official violates a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). This qualified immunity assessment entails a two-step analysis which asks whether the plaintiff's rights were violated and whether those rights were clearly established at the time of the alleged infraction., Here, we find that there has been no constitutional violation. It follows, therefore, that no clearly

## B. **Eddowes Fails to Allege a Cognizable Fourteenth Amendment Claim.**

Additionally, Eddowes alleges that the defendants failed to investigate his grievances regarding his medication and further stated his grievance denials were a result of a conspiracy between defendants working together to cover up medical fraud occurring at Rockview. Although it is not entirely clear from the complaint, we will construe the *pro se* complaint liberally and infer that these allegations constitute the gravamen of Eddowes' Fourteenth Amendment claim. However, Eddowes provides nothing more than unsupported, conclusory allegations that the prison officials failed to investigate his grievances. Moreover, the defendants attach a selection of the plaintiff's many grievances regarding his medication, which indicate that prison staff responded appropriately to these grievances. (See generally Doc. 73-3).

In any event, it is well-settled that, regardless of whether these officials complied with the Department of Corrections' grievance process, these internal procedures do not establish a constitutional deprivation because "inmate grievance procedures in themselves do not confer a liberty interest protected by the Due Process Clause." Jackson v. Beard, Civ. A. No. 07–2164, 2008 WL 879923, at *7 (E.D. Pa. Mar. 31, 2008). Indeed, prisoners have no constitutional right to a

---

established rights were violated and the defendants would also be entitled to qualified immunity.

grievance process, and, therefore, prison officials' failure to investigate or respond favorably to inmate complaints does not constitute a due process violation. <u>See Stringer v. Bureau of Prisons, Fed. Agency</u>, 145 F. App'x 751, 753 (3d Cir. 2005); <u>Thibodeau v. Watts</u>, No. 1:CV–05–2505, 2006 WL 89213, at *5 (M.D. Pa. Jan. 6, 2006) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable"). Additionally, "the state creation of such a [grievance] procedure does not create any federal constitutional rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address his grievances." <u>Wilson v. Horn</u>, 971 F.Supp. 943, 947 (E.D. Pa. 1997) (internal citations omitted).

Here, Eddowes' contends that the prison officials failed to investigate his grievances. However, records provided by the defendants indicate that prison officials investigated and responded to Eddowes' grievances, albeit in a manner that Eddowes found to be unsatisfactory. However, Eddowes may not convert his disappointment with the outcome of these grievances into a constitutional tort. Thus, even if Eddowes' claim was a cognizable claim under § 1983, his claim would fail, as it is wholly without merit. Accordingly, to the extent that Eddowes brings this

claim as a violation of Fourteenth Amendment Due Process, this claim fails as a matter of law and the defendants are entitled to summary judgment.

In closing we note that, while Eddowes' claims fail as a matter of law, we recognize the sincerity of Eddowes' concerns, which have been frequently voiced in this litigation and in his grievances to prison staff. We encourage Eddowes and prison medical staff to continue to work cooperatively to address these medical concerns in a medical arena since they are not subject to resolution through litigation.

## IV. <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 71) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of July, 2019.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge